[Nos. 80450-8; 80459-1.   En Banc.]
Argued November 18, 2008.      Decided May 14, 2009.

CHADWICK FARMS OWNERS ASSOCIATION, *Respondent.* v. FHC, LLC, *Petitioner*, AMERICA 1ST ROOFING & BUILDERS, INC., ET AL., *Respondents.*

EMILY LANE HOMEOWNERS ASSOCIATION, *Respondent,* v. COLONIAL DEVELOPMENT, LLC, ET AL., *Petitioners.*

*Eileen I. McKillop* (of *Oles Morrison Rinker & Baker, LLP*) and *John P. Hayes* and *Martin J. Pujolar* (of *Forsberg & Umlauf*), for petitioners.

*Richard S. Fallon*; *John E. Zehnder, Jr., Jonathan D. Holt,* and *Anthony R. Scisciani III* (of *Scheer & Zehnder, LLP*); *Mary H. Spillane* and *John P. Evans* (of *Williams Kastner & Gibbs, PLLC*); *David J. Bierman* (of *Alexander & Bierman, PS*); *Michaelanne Ehrenberg* (of *Karr Tuttle Campbell*); and *William S. Clement* and *John E. Drotz* (of *Clement & Drotz*), for respondents.

*Robert D. Welden* and *Paul H. Beattie, Jr.,* on behalf of Washington State Bar Association (Corporate/Business Law Section), amicus curiae.

*Bryan P. Harnetiaux* on behalf of Washington State Association for Justice Foundation, amicus curiae.

¶1 MADSEN, J. — These consolidated cases involve the capacity of limited liability companies to sue and be sued after their certificates of formation are canceled pursuant to provisions in the Washington Limited Liability Company Act, chapter 25.15 RCW (the Act). Under the plain terms of the Act, a limited liability company ceases to exist as a legal entity and cannot be sued once its certificate of formation is canceled. At the same time, it cannot sue other entities once it is canceled. RCW 25.15.303, enacted after the actions in the present cases were brought, does not change this result. This statute provides that dissolution does not affect any remedy available and it establishes a statute of limitations for suits against limited liability companies that runs from the date of dissolution. The statute does not authorize suits after cancellation, either against or by the limited liability company. Therefore, we reverse the Court of Appeals' deci-

sions in these cases and hold that the defendant limited liability companies were not subject to suit once they were canceled.

¶2 Also at issue is whether the members of the companies can be sued in their individual capacities. There are several circumstances in which individual liability may exist. Therefore, the Court of Appeals properly held in *Emily Lane Homeowners Ass'n v. Colonial Development, LLC*, 139 Wn. App. 315, 160 P.3d 1073 (2007), *review granted*, 163 Wn.2d 1022 (2008), that insofar as the trial court dismissed claims against individual members of the limited liability company solely because of the immunity under the Act, it erred.

## FACTS

### *Chadwick Farms*

¶3 On December 23, 1999, FHC, LLC (FHC) formed as a limited liability company under the Act for the purpose of constructing the Chadwick Farms condominiums. After the project was completed, FHC ceased active operations and did not pay license fees or file reports as required by statute. On March 24, 2003, the secretary of state administratively dissolved FHC, as provided for by RCW 25.15.280 if a limited liability company fails to pay fees or file reports. On August 18, 2004, the Chadwick Farms Owners Association (Owners Association) sued FHC for alleged construction defects. On March 24, 2005, pursuant to RCW 25.15.290(4) the secretary of state canceled FHC's certificate of formation because FHC did not apply for reinstatement as a limited liability company within two years after dissolution as permitted under RCW 25.15.290(1).

¶4 Although FHC's certificate of formation had been administratively canceled, on May 11, 2005, FHC filed third-party complaints against subcontractors and design professionals. Then, on August 24, 2005, FHC moved for summary judgment dismissing all of the Owners Associa-

tion's claims on the basis that FHC ceased to exist upon cancellation of its certificate of formation and all claims against it therefore abated. The third-party contractors and design professionals moved for summary judgment, too, on the basis that as a canceled limited liability company FHC was a legal nonentity that could not pursue third-party claims against them. On September 30, 2005, the trial court granted the motions for summary judgment.

¶5 The Owners Association appealed. The Court of Appeals reversed summary judgment in favor of FHC. The court held that RCW 25.15.303, which was enacted while the appeal was pending and had an effective date of June 6, 2006, applied retroactively and permitted the Owners Association's suit against FHC. *Chadwick Farms Owners Ass'n v. FHC, LLC*, 139 Wn. App. 300, 160 P.3d 1061 (2007), *review granted*, 163 Wn.2d 1021 (2008). As to the third-party claims brought by FHC, the court determined that RCW 25.15.303 does not apply to actions brought *by* a limited liability company. The court reasoned that FHC's failure to seek reinstatement within two years of dissolution was "fatal to its pursuit of any claim against the subcontractors." *Chadwick Farms*, 139 Wn. App. at 312. Once the secretary of state canceled FHC's certificate of formation, the Court of Appeals reasoned, FHC lacked standing to pursue a third-party claim. *Id.* Finally, the Court of Appeals held that the trial court should grant the Owners Association's motion to amend the complaint to add individuals who allegedly failed to properly wind up the affairs of FHC, and in particular, failed to pay or make provision to pay known claims against the company.

¶6 FHC sought discretionary review of both holdings, and the Owners Association sought discretionary review of the Court of Appeals' determination that FHC could not pursue third-party claims.

*Emily Lane*

¶7 On January 22, 1998, Colonial Development, LLC (Colonial) was formed as a limited liability company for the

purpose of developing and selling the Emily Lane condominiums. On December 22, 2004, the members of Colonial voted to dissolve the company effective the same date. On December 31, 2004, Colonial filed a certification of cancellation with the secretary of state.

¶8 About five months later, the Emily Lane Townhomes Condominium Association (Condominium Association) served Colonial with a notice of construction defects under chapter 64.50 RCW. On July 19, 2005, the Condominium Association filed suit against Colonial. In its answer, Colonial included in its defenses the fact that it was a "dissolved" [sic] limited liability company not subject to suit. The Condominium Association thereafter amended its complaint to include claims against the individual members, asserting, among other things, improper winding up of the limited liability company, fraudulent concealment, negligent and fraudulent misrepresentation, and it sought to pierce the "corporate veil."[1] Clerk's Papers at 603-21; Emily Lane's Answer to Pet. for Review at 6.

¶9 On June 7, 2006, Colonial, its members, and two individually named defendants moved for summary judgment. At this time, RCW 25.15.303 had just become effective. The Condominium Association argued that under the Act claims against a canceled limited liability company never abate. It also argued that RCW 25.15.303 applies retroactively to "revive" barred claims. The trial court denied Colonial's motion for summary judgment. As to the members and individually named defendants, the trial court granted summary judgment. The court then certified the partial summary judgment as appropriate for discretionary review under RAP 2.3(b)(4). The Condominium Association sought cross-discretionary review of dismissal of the members and the individually named defendants.

¶10 The Court of Appeals granted discretionary review of the trial court's ruling denying Colonial's motion for sum-

---

[1] Since Colonial was not a corporation, it was erroneous to speak in terms of piercing the "corporate" veil.

mary judgment and, in the interests of judicial economy, also granted review of the summary judgment dismissing the individual members and entities that formed Colonial. The Court of Appeals affirmed denial of summary judgment as to Colonial in light of its decision in *Chadwick Farms*, saying it saw "no reason to treat a member dissolved and cancelled company differently than an administratively dissolved and cancelled company." *Emily Lane*, 139 Wn. App. at 318. As to the individual defendants, the court limited review solely to the question whether "the members [of Colonial] were immune from liability as individuals." *Id.* at 319. The court held that "[t]o the extent the trial court's summary judgment dismissed the claims against individual members of Colonial on the basis that the [limited liability company] structure provided immunity from liability, it was error." *Id.*

¶11 Colonial sought discretionary review.

## ANALYSIS

¶12 A question of statutory interpretation is reviewed de novo. *Wright v. Jeckle*, 158 Wn.2d 375, 379-80, 144 P.3d 301 (2006). The goal is to ascertain and give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* "The plain meaning of a statute may be discerned 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting *Campbell & Gwinn*, 146 Wn.2d at 11). Although there are a number of statutes that must be considered in these cases, in the end the Act provides clear answers in plain language to the questions raised by the parties.

¶13 We begin with a general description of limited liability companies. A limited liability company is a statutory

business structure that is like a corporation in that members of the company are generally not personally liable for the debts or obligations of the company and like a partnership in that it can be classified as a partnership for tax purposes and therefore avoid "double taxation." 1 NICHOLAS KARAMBELAS, LIMITED LIABILITY COMPANIES, LAW, PRACTICE AND FORMS § 1:1, at 1-2 (2d ed. 2008). In 1994 the legislature authorized the formation of limited liability companies in Washington, which are entirely creatures of statute. LAWS OF 1994, ch. 211.[2]

¶14 To form a limited liability company, one or more persons must execute a certificate of formation which must be filed in the office of the secretary of state. RCW 25.15-.070(1). The limited liability company comes into existence when its certificate of formation is filed in the secretary of state's office. RCW 25.15.070(2)(a). In general, a limited liability company can carry on any lawful business or purpose. RCW 25.15.030(1). The company can make and alter agreements for administration and regulation of the company's affairs. RCW 25.15.005(5). A member of a limited liability company may be an individual, partnership, corporation, another limited liability company, or any other legal entity. RCW 25.15.005(8), (9).

¶15 A limited liability company can be dissolved in several ways, including (a) the happening of an event specified in the limited liability company agreement, (b) by consent of the members, (c) through judicial dissolution, for example, when one or more members seeks dissolution but not all members consent to dissolution, and (d) through administrative dissolution by the secretary of state. RCW 25.15.270. As to the latter, administrative dissolution can occur when, for example, the limited liability company fails to file required annual reports or pay required license fees,

---

[2] Washington's Act is modeled substantially on the Uniform Limited Liability Company Act. 31 DALE L. CARLISLE & BROOKE A. JOHNSON, WASHINGTON PRACTICE: WASHINGTON BUSINESS LAW 689 cmt. to 25.15.005 (2008) (citing *Dragt v. Dragt/ DeTray, LLC*, 139 Wn. App. 560, 575, 161 P.3d 473 (2007), *review denied*, 163 Wn.2d 1042 (2008)).

as occurred in the case of FHC in *Chadwick Farms*. RCW 25.15.280. The secretary of state must give written notice of dissolution that states the grounds for dissolution and the effective date of dissolution. RCW 25.15.285(2). Once the secretary of state gives notice that administrative dissolution is pending, a limited liability company has 60 days in which to correct each ground of dissolution, and if it fails to do so, it is administratively dissolved. RCW 25.15.285(1), (2).

¶16 Dissolution does not terminate the existence of the limited liability company. 1 KARAMBELAS, *supra*, § 9:4, at 9-5 (2d ed. 2008 Supp. 1). Instead, it begins a period in which the affairs of the company must be wound up. RCW 25.15.270(1); *see* RCW 25.15.295, .285(4). Winding up involves liquidating assets, paying creditors, and distributing proceeds from liquidation of assets to the members of the company. 1 KARAMBELAS, *supra*, § 9:6, at 9-8.

¶17 After dissolution, during which the winding up process is to be completed, the limited liability company's certificate of formation will be canceled. In the case of an administratively dissolved company, if the company does not seek reinstatement within two years after the date of dissolution, then by operation of law its certificate of formation will be canceled by the secretary of state two years after that date. RCW 25.15.285(4), .080, .290(1). This also occurred in the case of FHC, when it failed to seek reinstatement within the two-year period. When a limited liability company dissolves by consent of its members, as in the case of Colonial in *Emily Lane*, it files a certificate of cancellation, which upon its effective date cancels the certificate of formation. RCW 25.15.080.

¶18 Upon cancellation, the limited liability company ceases to exist. RCW 25.15.070(2)(c) provides, *"A limited liability company formed under this chapter shall be a separate legal entity, the existence of which as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation."* (Emphasis added.)

*Whether a limited liability company may be sued after cancellation*

¶19 The first issue is whether a limited liability company may be sued after its certificate of formation is canceled, ending its existence as a legal entity.

¶20 In *Chadwick Farms*, the Owners Association filed their suit after Chadwick Farms was administratively dissolved and before its certificate of formation was canceled. In reversing the trial court's grant of summary judgment in favor of FHC, the Court of Appeals first said that prior to enactment of RCW 25.15.303 the statutes governing limited liability companies did not provide for survival of a claim after the company's affairs were wound up and a certificate of cancellation had been filed. *Chadwick Farms*, 139 Wn. App. at 305. In other words, under the statutes as they existed prior to RCW 25.15.303, any suit properly filed against a limited liability company abated upon cancellation of the certificate of formation. This conclusion is correct.

¶21 Under the statutory scheme applying to limited liability companies that are administratively dissolved, if the company does not seek reinstatement it must wind up the company's affairs within that two year period, because once the two years pass, the company no longer exists and has no power to act. While the company still exists, and during the time it is winding up (the time following dissolution and before cancellation of the certificate of formation), it has the power to prosecute and defend suits. RCW 25.15.295(2). But once the company is canceled, it can no longer prosecute or defend suits; it no longer exists as a legal entity. *Id.* (expressly stating that those individuals winding up may prosecute or defend suits "until the filing of a certificate of cancellation"); RCW 25.15.070(2)(c) (a limited liability company ceases to exist as a separate legal entity once its certificate of formation is canceled). In addition, during the winding up period a limited liability company must pay or make arrangements for paying

known claims and obligations, including all known "contingent, conditional, or unmatured claims and obligations." RCW 25.15.300(2).

¶22 Here, FHC, as an administratively dissolved limited liability company, had two years in which to wind up, including prosecuting and defending suits, or else it had to seek reinstatement to obtain additional time in which to complete the winding up process. Because FHC did not seek reinstatement, then any suits it brought or any suits against it were limited to the two year period available for winding up the affairs of the company before it was canceled as a matter of law. Once the two-year reinstatement/winding up period passed and the company's certificate of formation was canceled, it could no longer sue or be sued because it ceased to exist.

¶23 The Owners Association contends, however, that in the case of administrative dissolution and cancellation, cancellation means only that the company cannot seek reinstatement once two years have passed without an application for reinstatement. The Owners Association argues that until a certificate of cancellation is actually filed in the secretary of state's office, the limited liability company can continue to wind up, including prosecuting and defending suits.

¶24 This argument fails because it conflicts with the Act. If a limited liability company is dissolved upon events specified in the company agreement or the consent of the members, for example, the company and its managers and members control the timing of dissolution, winding up, and filing a certificate of cancellation. In such circumstances, the certificate of formation is canceled by and upon the filing of a certificate of cancellation. RCW 25.15.080. But when the secretary of state administratively dissolves a limited liability company for failure to pay fees or file reports (as here), cancellation of the certificate of formation automatically occurs two years later if the company does not seek reinstatement. *See* RCW 25.15.080 ("[a] certificate of formation shall be cancelled upon the effective date of the

certificate of cancellation, or as provided in RCW 25-.15.290"); RCW 25.15.290(1) (an administratively dissolved limited liability company has a two-year period in which to seek reinstatement); RCW 25.15.290(4) (the certificate of formation of the limited liability company "shall" be canceled if the company does not seek reinstatement within two years).

¶25 In other words, filing a certificate of cancellation in the case of a nonadministratively dissolved company establishes the time of cancellation of the certificate of formation, while in the case of an administratively dissolved company, by law the secretary of state must cancel the company's certificate of formation at the end of the two-year period. RCW 25.15.080, .290(4). In either case, the critical event is the cancellation of the certificate of formation. RCW 25-.15.070(2)(c) states, as noted, that a limited liability company continues as a separate legal entity "until *cancellation* of the limited liability company's *certificate of formation*." (Emphasis added.)

¶26 In addition, just as in the case of other dissolutions, dissolution in the form of administrative dissolution begins the winding up period, contrary to the Owners Association's argument. RCW 25.15.285(3) provides that an administratively dissolved limited liability company must liquidate and wind up its business and affairs. It states that after dissolution, an administratively dissolved limited liability company "may not carry on any business except as necessary to wind up and liquidate its business and affairs." *Id.* The statutes do not permit an administratively dissolved limited liability company to continue winding up, including prosecuting and defending suits, on its own schedule after cancellation of the company's certificate of formation.[3]

---

[3] Amicus curiae Washington State Association for Justice Foundation (WSAJF) argues that other statutes show that a limited liability company must respond to legal action after cancellation, but the statutes it cites do not support the argument. First, RCW 25.15.285(4), which provides that administrative dissolution of a limited liability company does not terminate the authority of its registered agent, simply does not speak to *cancellation* or the post-cancellation period; it refers only to dissolution. Second, RCW 25.15.335(1) provides that

RCW 25.15.295(2) applies to administratively dissolved companies every bit as much as it applies to others, and this provision states that winding up, including prosecuting and defending suits, can continue only until cancellation.

¶27 Chapter 25.15 RCW, as it existed before enactment of RCW 25.15.303, provided that an action against a limited liability company abates after the company's certificate of formation is canceled; instead, its existence as a separate legal entity ends. Thus, when FHC's certificate of formation was canceled on March 24, 2005, it ceased to exist as a separate legal entity and could no longer be sued. Similarly, because the Condominium Association's suit was filed in *Emily Lane* after Colonial filed its certificate of cancellation, Colonial was not subject to suit under the statutes as they existed prior to enactment of RCW 25.15.303. There is no basis to treat a member canceled limited liability company differently than an administratively dissolved company, as the Court of Appeals said.[4]

"cancellation does not terminate the authority of the secretary of state to accept service of process on the foreign limited liability company with respect to causes of action arising out of the doing of business in this state." However, the "cancellation" referred to in this statute is cancellation of *registration* of a foreign limited liability company organized under the law of another state or foreign country and registered to do business in this state under RCW 25.15.315. It does not concern cancellation of a foreign limited liability company's certificate of formation (which would be a matter of the other jurisdiction's law in any event). Finally, in connection with the merger provisions of chapter 25.15 RCW, RCW 25.15.410(1)(d) provides that any pending action against an entity that merges with another entity may be continued as if the merger had not occurred or the surviving entity may be substituted in the proceeding for the merged entity whose existence ceased. WSAJF points out that under RCW 25.15.410(1)(a) the separate existence of a merged limited liability company ceases. But contrary to WSAJF's claim that these provisions would be meaningless if cancellation abated any pending claims, merger is a very different concept from cancellation of a limited liability company following dissolution. In the case of merger, the merged limited liability company's assets and liabilities continue in the resulting entity (or entities), though the limited liability company's separate existence ceases, unlike the situation when a limited liability company is dissolved and canceled. *See* THOMAS A. HUMPHREYS, LIMITED LIABILITY COMPANIES & LIMITED LIABILITY PARTNERSHIPS § 4.04[4], at 4-57 (1998).

[4] Relying solely on a single clause in RCW 25.15.295(2) pertaining to authority during the winding up period to discharge or make provision for the company's liabilities, the dissent argues that the legislature did not intend that actions against a limited liability company would abate upon cancellation. This clause, which *is not at issue here, does not nullify the entire statutory scheme regarding*

*RCW 25.15.303*

¶28 The next issue is whether RCW 25.15.303, enacted while these cases were pending, alters the result. It does not.

¶29 RCW 25.15.303 provides:

> *The dissolution of a limited liability company* does not take away or impair any remedy available against that limited liability company, its managers, or its members for any right or claim existing, or any liability incurred at any time, *whether prior to or after dissolution,* unless an action or other proceeding thereon is not commenced within three years after the effective date of dissolution. Such an action or proceeding against the limited liability company may be defended by the limited liability company in its own name.

(Emphasis added.)

¶30 Although the statute expressly refers to "dissolution," not "cancellation," the Court of Appeals characterized the legislature's choice of the term "dissolution" as "inartful" and held that the statute permits actions against canceled limited liability companies and not just dissolved limited liability companies. *Chadwick Farms,* 139 Wn. App. at 307-12. Therefore, the Court of Appeals held, the Owners Association could pursue their action against FHC. Similarly, the court determined, the post-cancellation suit brought in *Emily Lane* was viable.

¶31 By its plain language, RCW 25.15.303 provides that (1) dissolution does not affect any claim against a limited liability company and (2) there is a three-year limitations period from the date of dissolution in which to commence suit against a limited liability company. The statute never mentions "cancellation." Of utmost importance, the legislature did not alter any provision in chapter 25.15 RCW and thus it left intact the statutes discussed above which provide that a limited liability company maintains its existence as a

---

limited liability companies, and in particular cannot breathe life into an entity that by the plain language of RCW 25.15.070(2) ceases to exist upon cancellation.

separate legal entity during dissolution but only until cancellation. In particular, as noted, RCW 25.15.295(2) unambiguously states that after a limited liability company is dissolved and before cancellation, i.e., during the winding up period, a manager or other representative who winds up the company's affairs may "prosecute and defend suits" only until cancellation.[5]

¶32 The Condominium Association in *Emily Lane* contends, however, that all canceled limited liability companies are also first dissolved companies, and logically the statute applies to dissolved companies that later cancel themselves. Amicus Washington State Association for Justice Foundation makes a similar argument.

¶33 However, there is a clear distinction between dissolution and cancellation. A dissolved company still exists for the purpose of winding up, during which it can sue or be sued. But once a limited liability company's certificate of formation is canceled, it no longer exists as a separate legal entity for any purpose.[6] RCW 25.15.303 does not even

---

[5] RCW 25.15.295(2) provides in full:

Upon dissolution of a limited liability company and until the filing of a certificate of cancellation as provided in RCW 25.15.080, the persons winding up the limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits, whether civil, criminal, or administrative, gradually settle and close the limited liability company's business, dispose of and convey the limited liability company's property, discharge or make reasonable provision for the limited liability company's liabilities, and distribute to the members any remaining assets of the limited liability company.

[6] The Condominium Association in *Emily Lane* makes the argument that the termination of a limited liability company as a separate legal entity does not mean the company has no existence. The Association posits that "[l]ike a partnership at common law, a cancelled LLC [(limited liability company)] may have no 'separate' existence apart from its members, but still have existence and be subject to suit," saying that at common law partnerships existed even though they did not in law exist apart from their members. Answer to Pet. for Review at 14 n.24. However, a limited liability company is defined by statute. As amicus the Washington State Bar Association says, "[t]he LLC is a creature of statute, not of common law" and the "only *relatively* sure footing here is the language of the Act itself." Br. of Amicus Curiae Wash. State Bar Ass'n at 6. Taken to its logical end, the argument would mean that the individual members of an LLC would be liable for the debts and obligations of the limited liability company after the company's existence as a separate legal entity ended, in direct contravention of the immunity afforded by

mention cancellation, and the legislature did not alter any of the existing provisions in the Act. On its face, and read in the context of the entire Act, RCW 25.15.303 means that an action against a limited liability company, whether arising before or after dissolution, must be brought within three years of dissolution, but an action against a limited liability company will abate upon cancellation.

¶34 The plain language in RCW 25.15.303 and the other provisions in the Act resolve the statute's meaning. Because we find no ambiguity, we have no reason to consider legislative history. *See Christensen v. Ellsworth*, 162 Wn.2d 365, 372-73, 173 P.3d 228 (2007); *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001). But we note that, in any event, the statute's history supports our reading of its plain language. RCW 25.15.303 journeyed through the legislative process hand in hand with the amendment to the survival statute pertaining to corporations that was addressed by this court in *Ballard Square Condominium Owners Ass'n v. Dynasty Construction Co.*, 158 Wn.2d 603, 146 P.3d 914 (2006). Both statutory provisions were in response to the Court of Appeals' decision in *Ballard Square*, where that court determined that, absent a survival statute, claims against a corporation arising after dissolution of the corporation abated. The legislature's concern after this decision was the possibility of a similar court decision in the context of a limited liability company, i.e., a ruling that suit could not be brought following dissolution of a limited liability company. The house bill report noted, "A recent court decision has left many homeowners without a remedy for claims against a dissolved corporation." H.B. REP. on S.B. 6531, at 2, 50th Leg., Reg. Sess. (Wash. 2006). The report also explains that the Act as it existed had "no express provision regarding the preservation of remedies or causes of action following dissolution of the business entity." *Id.* The house bill report's summary of the effect of the bill states, "Dissolution of a limited liability company will not

the Act. (While there are certain exceptions to individual immunity, as mentioned and explained below, the general rule is immunity.)

eliminate any cause of action against the company that was incurred prior to or after the dissolution if an action on the claim is filed within three years after the effective date of the dissolution." *Id.* at 3.

¶35 Both the senate and house bill reports disclose that the legislature clearly knew the difference between "dissolution" and "cancellation"—indeed, the house bill report expressly differentiates between the two—and that its intent was to expressly provide that causes of action do not abate upon dissolution, with a three year limitations period applying to suits brought after dissolution.[7] The legislature plainly responded to the concern raised by the Court of Appeals' decision in *Ballard Square*, i.e., ensuring that suit could be prosecuted against a limited liability company after dissolution. The legislature did not otherwise change the statutory scheme.[8]

---

[7] The Owners Association contends, however, that the legislature "identified the gap it was trying to close by noting that the Act had 'no provision regarding the preservation of claims following cancellation of the certificate of formation.' " Chadwick Farms Owners Ass'n's Suppl. Br. at 19 (quoting H.B. Rep. on S.B. 6531, at 3). The quoted sentence appears in a description of the existing law and accurately states that there is no preservation of claims after cancellation. The explicit reference to "cancellation" does not identify a "gap" the legislature was trying to close, but instead is part of the discussion of existing law that shows the legislature knew the difference between "cancellation" and "dissolution."

[8] The dissent accepts the argument that RCW 25.15.303 is retroactive and authorizes suits against canceled limited liability companies. But contrary to the dissent's reasoning, the fact that the statute is related to the statute in *Ballard Square* does not mean that the present statute is retroactive. The statute at issue in *Ballard Square* by its express language applied retroactively, unlike the statute in this case, which has absolutely no such language. Since the two statutes went through the legislative process together, this difference shows the legislature did not intend retroactivity. Further, although the legislative history shows that the reason the statute was enacted was the same as the reason that the statute in *Ballard Square* was enacted—the reason was to permit suit against *dissolved* companies (corporations, in the case of *Ballard Square*, and limited liability companies, in the present case). Both statutes, by their express terms, do exactly that. The dissent's reliance on the language in the house bill report that there was no provision in the existing statutes regarding preservation of claims after cancellation is also misplaced. The report was simply stating the facts about the existing state of the law. This language actually shows that the legislature was well aware that there was no provision for preservation of claims after "cancellation" and yet the legislature deliberately and expressly chose to preserve claims after *"dissolution"* and *not* after cancellation. RCW 25.15.303. The legislature

¶36 The Owners Association argues, however, that unless the statute is applied to canceled companies, a limited liability company could ignore its obligations to pay, fail to file reports and pay fees, and simply wait for two years until it could no longer be sued. Similarly, the Owners Association says, a dissolved company could simply file a certificate of cancellation and so avoid liability. These arguments do not take into account the whole statutory scheme, however. A dissolved limited liability company must, under the Act, properly complete the winding up process, which includes paying or making arrangements to pay known obligations and claims, even if unmatured or contingent. Members of a limited liability company who fraudulently attempt to use the provisions of the act to avoid liability and members who wind up a limited liability company improperly expose themselves to individual liability, as addressed more fully below.

¶37 The homeowners associations also argue that RCW 25.15.303 must be read to apply to a canceled limited liability company because otherwise the statute would be rendered inoperative. But the statute, in conjunction with the rest of the statutes in chapter 25.15 RCW, is effective when applied according to its terms. It provides a three-year period after dissolution in which to assert claims against a limited liability company, up to the time the company's certificate of formation is canceled. In some cases, actions will abate prior to expiration of the three-year period, for example, in a case involving an administratively dissolved limited liability company that does not seek reinstatement. But even in the context of administrative dissolution the statute remains effective because an action might be resolved within the two-year reinstatement period or the administratively dissolved limited liability company might seek reinstatement, which would relate back to the date of dissolution, RCW 25.15.290(3), and thereby obtain time in which to prosecute and defend

clearly knew the difference. After enactment of RCW 25.15.303 there is still no provision for preservation of claims against a canceled limited liability company.

existing actions. An administratively dissolved limited liability company may have significant incentive to seek reinstatement because individual members who are winding up a limited liability company's affairs may be personally liable if they fail to do so properly.

¶38 We recognize, however, that these arguments reflect the homeowners' view that the statute is unfair when it is applied according to its express terms. However, if the result here is not what the legislature envisioned it is, nonetheless, what the statute plainly provides. We understand from the house and senate bill reports that a comprehensive review of the Act is underway. If the result here is not what the legislature wants, it will be positioned to make additional changes deemed necessary. It is not, however, the province of this court to rewrite RCW 25.15.303 or any other provision of the Act.

¶39 We conclude that the statute means precisely what it says. *Dissolution* does not take away or impair any remedy provided that an action is commenced within three years of dissolution. RCW 25.15.303 does not authorize actions against a limited liability company whose certificate of formation has been canceled.[9]

¶40 In *Chadwick Farms* the Owners Association's action against FHC abated when FHC's certificate of formation was canceled and it ceased to exist as a separate legal entity. We reverse the Court of Appeals and hold that the trial court properly granted summary judgment in favor of FHC. In *Emily Lane*, the Condominium Association could not properly sue Colonial because it was a canceled limited liability company at the time suit was brought. We reverse the Court of Appeals and hold that Colonial's motion for summary judgment should have been granted by the trial court.

---

[9] In light of our holding that RCW 25.15.303 does not permit actions against a canceled limited liability company, we need not reach the question whether the statute applies retroactively. However, as a limitations statute, it would apply to preexisting actions only if the legislature intended retroactive application, and here there is no evidence of such intent. *See Ballard Square,* 158 Wn.2d at 616.

*Whether a limited liability company has the capacity to sue after cancellation*

¶41  We turn briefly to the question of the capacity of a canceled limited liability company to sue. As noted, the Court of Appeals held that RCW 25.15.303 permitted suits against a canceled limited liability company but did not permit suits by a canceled company. Although the court's reasoning was erroneous, its ultimate conclusion, that a canceled limited liability company lacks capacity to sue, is correct. RCW 25.15.295(2) provides as to any dissolved limited liability company that the persons winding up the company's affairs can prosecute or defend suits only until the certificate of cancellation is filed. And, as mentioned before, RCW 25.15.070(2)(c) provides that the separate legal existence of a limited liability company ends upon cancellation of the certificate of formation. Thus, a limited liability company's ability to sue ends upon cancellation.

¶42  As to administratively dissolved companies, the legislature's decision that an administratively dissolved limited liability company has two years in which to wind up, including prosecuting an action, is not as harsh at it might seem at first. At all times the power to continue to prosecute claims lies with the limited liability company, which can seek reinstatement.

*Personal liability of members of a limited liability company*

¶43  The final issue is whether the members of a limited liability company may be personally liable for acts or liabilities of the company. In *Emily Lane*, the Court of Appeals held that to the extent the trial court granted summary judgment to the members of Colonial based on immunity under the Act, it erred. The court explained that individual members could be liable if they failed to properly wind up the affairs of the company, and observed that the Act allows for piercing the veil of a limited liability company. *Emily Lane*, 139 Wn. App. at 319-20.

¶44 In *Chadwick Farms*, the Court of Appeals held, as the Owners Association urged, that the trial court should have granted the Owners Association's motion to amend its complaint to add individual defendants based on their alleged failure to properly wind up FHC's affairs and pay or make provision for paying known claims. *Chadwick Farms*, 139 Wn. App. at 313-14. FHC does not challenge this holding.

¶45 In general, members and managers of a limited liability company are not personally liable for the company's debts, obligations, and liabilities. RCW 25.15.125(1). There are exceptions to this general rule. For example, an individual member is personally liable for his or her own torts. RCW 25.15.125(2). A member is also liable for contributions to which they have agreed and for the return of distributions made while the limited liability company is insolvent or which render the limited liability company insolvent if the member knew the distribution was wrongful. RCW 25.15.195(1), .235(2). Under RCW 25.15.060, a member may also be liable under the theory of piercing the veil of the limited liability company if respecting the limited liability company form would work injustice, in the same way that an individual may be personally liable under the theory of piercing the corporate veil.[10] In general, to pierce the corporate veil the plaintiff must show that the corporate form was used to violate or evade a duty and that the corporate veil must be disregarded in order to prevent loss to an innocent party. *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 503, 90 P.3d 42 (2004); *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 409-10, 645 P.2d 689 (1982). By analogy, then, a plaintiff would have to show that the limited liability company form was used to violate or evade a duty and that the limited liability company form must be disregarded to prevent loss to an innocent party.

---

[10] RCW 25.15.060 authorizes piercing the veil of a limited liability company and provides that individual members of the company may be liable "to the extent" that shareholders in a corporation may be subject to personal liability under established case law (with exceptions that are not relevant here).

¶46 Another exception exists when a member is responsible for winding up the affairs of the limited liability company and does so improperly. Following dissolution and during the period of winding up, a limited liability company that is dissolved must pay or make reasonable provision for paying all claims and obligations known to the company, including "contingent, conditional, or unmatured claims and obligations." RCW 25.15.300(2). RCW 25.15.300(2) also states that "[a]ny person winding up a limited liability company's affairs who has complied with this section is not personally liable to the claimants of the dissolved limited liability company by reason of such person's actions in winding up the limited liability company." It follows that, as the Court of Appeals determined in *Emily Lane*, personal liability to claimants may result if the persons winding up the company's affairs do not comply with RCW 25.15.300.[11]

¶47 In *Emily Lane*, the parties' dispute whether Colonial knew (or should have known), prior to cancellation, of the claims that were later asserted. Because the Court of Appeals' interlocutory discretionary review in *Emily Lane* addressed only questions of law, and in light of the trial court's apparent summary judgment rulings, whether Colonial was properly wound up and possible personal liability remain to be determined. The Court of Appeals correctly concluded that to the extent the trial court granted summary judgment to the members of Colonial on the basis of immunity under the Act as a matter of law, it did so erroneously.

¶48 In *Chadwick Farms*, it appears that the Court of Appeals correctly determined that the trial court should have granted the Owners Association's motion to amend the complaint and add individuals who allegedly failed to

---

[11] *See* 1 STEWART M. LANDEFELD & ERIC A. DEJONG, WASHINGTON BUSINESS ENTITIES: LAW AND FORMS § 20.01[b], at 20-4; § 20.08[c], at 20-23 n.84 (2d ed. 2007) ("[l]imited liability means that no member will be personally liable for the LLC's obligations in excess of the amount that he or she contributed, or is otherwise obligated to contribute, to the LLC"; "[a] person winding up a limited liability company who has complied with the terms of the Washington Act is not personally liable to the claimants of the dissolved LLC").

comply .with the winding up requirements in RCW 25-.15.300(2). Under CR 15(a), leave to amend should be freely granted when justice so requires. During the winding-up period, FHC did not pay the claims asserted by the Owners Association. If those claims are valid and FHC failed to make provision for paying them, then FHC did not properly wind up its affairs—it clearly knew of the claims at the time it was canceled. Nor did FHC seek reinstatement, which would have allowed for litigating those claims and for bringing in the contractors and design professionals as third party defendants. As noted, however, FHC has not challenged the Court of Appeals' ruling that the trial court should permit amendment of the complaint.

¶49 We uphold the Court of Appeals' determination in *Emily Lane* that insofar as the trial court granted summary judgment dismissing the claims against individual members of Colonial on the basis that the limited liability company structure provided immunity from liability, it was error.

¶50 As noted, *Emily Lane* is here on discretionary review of the Court of Appeals' interlocutory discretionary review of a partial summary judgment. There are numerous claims and issues remaining to be addressed by the trial court. We decline to address issues raised by the Condominium Association that were not subjects of the Court of Appeals' grant of interlocutory discretionary review, including its claim that Colonial "waived" an "abatement defense."

CONCLUSION

¶51 In *Chadwick Farms* we affirm the Court of Appeals determination that under the statutes existing prior to enactment of RCW 25.15.303 a dissolved company whose certificate of formation has been canceled cannot be sued. We reverse the Court of Appeals' holding that RCW 25.15.303 applies in the case of a canceled limited liability company. Instead, the statute provides that dissolution does not take away or impair any available remedy and it establishes a three-year limitations period running from

the date of dissolution. Once a limited liability company's certificate of formation is canceled, however, the company no longer has the capacity to sue or be sued. Accordingly, once FHC was administratively canceled, the Owners Association's claims against the company abated. Similarly, in *Emily Lane* we reverse the Court of Appeals' holding that the Condominium Association could sue Colonial, a canceled limited liability company.

¶52 We affirm the Court of Appeals' holding in *Emily Lane* that to the extent the trial court dismissed the Condominium Association's claims against individual members as a matter of law based on immunity under the Act, the trial court erred. There are bases for personal liability that may (or may not) be applicable here. We decline to reach other issues raised by the Condominium Association because they were not encompassed by the grant of interlocutory discretionary review of the trial court's grant of partial summary judgment.

ALEXANDER, C.J.; FAIRHURST and J.M. JOHNSON, JJ.; and KORSMO, J. PRO TEM., concur.

¶53 C. JOHNSON, J. (dissenting) — The majority too narrowly focuses on only one statutory section, making meaningless other sections the legislature enacted to protect homeowners' rights to pursue their legal remedies. To the majority, cancellation is the only consideration. This conclusion makes little statutory sense if other sections are given their statutory effect. Applying the majority's conclusion, it makes no difference if a limited liability company (LLC) knew of a claim (under RCW 25.15.295(2)), that the LLC had set aside funds/assets to satisfy claims under RCW 25.15.295(2), or that suit was filed to pursue those claims. The majority holds that even if final argument were occurring, or appeal taken, cancellation of the LLC abates any such action. This conclusion simply reads too much out of the statutory scheme and, viewing the entire statutory framework, does not make sense. The Court of Appeals should be affirmed.

¶54 The majority relies on language found in RCW 25.15.295(2): "Upon dissolution of a limited liability company and *until the filing of a certificate of cancellation* . . . , the persons winding up the limited liability company's affairs may, in the name of . . . the limited liability company, *prosecute and defend suits* . . . ." The majority interprets this provision to mean that a lawsuit automatically abates the moment an LLC is canceled unless the lawsuit is completed before the date of cancellation. Majority at 190. The majority does not find or cite any rule or case to support this proposition; rather, the majority reaches this conclusion based on inference alone. But such a rule proves too much, and the inference made by the majority to reach its rule is weakened by the plain language of the very provision on which the majority relies, RCW 25.15.295(2).

¶55 In addition to the language relied on by the majority, RCW 25.15.295(2) also provides that "the persons winding up the limited liability company's affairs *may [either] discharge or make reasonable provision for the limited liability company's liabilities* . . . ." (Emphasis added.) The disjunctive "or" imparts a requirement on the person winding up the LLC to do one *or* the other. This language also implies that a party who timely commences a lawsuit against an LLC after its dissolution, but before cancellation, should be able to seek remedy from the set-aside funds. This requirement for set-aside funds implicitly preserves the party's suit and supports not reading the statute to require lawsuits to abate automatically when the LLC is canceled.

¶56 In other words, with these statutory provisions, the legislature has provided rights to LLCs that dissolve and has required such LLCs to meet certain responsibilities during the winding up period. During this period, LLCs have the right to pursue and defend suits and are obligated to set aside funds adequate to satisfy certain liabilities. It makes no sense that the legislature would provide for such rights and responsibilities and then simply allow any claims filed by or against the LLC to abate the moment a certificate of cancellation is filed, which could be in the middle of trial.

This is the majority's conclusion, and such an interpretation misreads the plain language of the statute and fails to give the statutory provisions their full effect.

¶57 But even if the majority's interpretation of RCW 25.15.295(2) is plausible, it is somewhat irrelevant to reaching a conclusion in this matter. If we hold RCW 25.15.303 is remedial, it applies retroactively and means interpreting the preamendment language of RCW 25.15.295(2), as the majority does, is unhelpful in determining whether actions against an LLC abate automatically or may survive cancellation for a period of time.

¶58 As the Court of Appeals properly recognized, holding that cancellation abates actions notwithstanding the provisions of RCW 25.15.080 "render[s] the 2006 amendment inoperative as it would link the survival of claims not to a specific survival period but rather to the actions or . . . nonaction of a company." *Chadwick Farms Owners Ass'n v. FHC, LLC*, 139 Wn. App. 300, 311, 160 P.3d 1061 (2007), *review granted*, 163 Wn.2d 1021 (2008); *see also Emily Lane Homeowners Ass'n v. Colonial Dev., LLC*, 139 Wn. App. 315, 318, 160 P.3d 1073 (2007), *review granted*, 163 Wn.2d 1022 (2008) (stating the holding in *Chadwick* controls the outcome in *Emily Lane*). The plain language of RCW 25.15.303 provides that an action may lie against an LLC three years from the date it dissolves. Reading the other statutory provisions to construe this provision to mean claims against an LLC abate upon cancellation, simply reads too much out of the statutory provisions.

¶59 Generally, a new limitations period runs prospectively. But an amendment to a statute may be applied retroactively if the legislature intends so and permitting retroactivity does not impair a constitutional right. A statute will also apply retroactively if it is curative or remedial. *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 584, 146 P.3d 423 (2006). A statute is remedial when it relates to practice, procedure, or remedies and does not affect a

substantive or vested right.[12] " 'When an amendment clarifies existing law and where that amendment does not contravene previous constructions of the law, the amendment may be deemed curative, remedial and retroactive. This is particularly so where an amendment is enacted during a controversy regarding the meaning of the law.' " *In re Pers. Restraint of Matteson*, 142 Wn.2d 298, 308, 12 P.3d 585 (2000) (quoting *Tomlinson v. Clarke*, 118 Wn.2d 498, 510-11, 825 P.2d 706 (1992)).

¶60 Here, the legislature enacted RCW 25.15.303 at the same time as a similar amendment to the Business Corporation Act (BCA), chapter 23B.14 RCW.[13] The legislative histories of both survival statutes show these amendments were adopted in an effort to address the Court of Appeals' opinion in *Ballard Square Condominium Owners Ass'n v. Dynasty Construction Co.*, 126 Wn. App. 285, 295-96, 108 P.3d 818 (2005), *aff'd on other grounds*, 158 Wn.2d 603, 146 P.3d 914 (2006). The amendment to the BCA is analogous to the amendment to the Washington Limited Liability Company Act (LLCA), chapter 25.15 RCW. The statutes were sponsored by the same legislators and were enacted in tandem. *Compare* H.B. REP. on S.B. 6531, at 3, 59th Leg., Reg. Sess. (Wash. 2006) *with* H.B. REP. on S.B. 6596, at 7, 59th Leg., Reg. Sess. (Wash. 2006) (shows the amendments to the BCA and LLCA were signed into law and became effective on the same day). Further, testimony before the House Judiciary Committee from the bill's sponsor explains the bill's purpose was to correct a problem for LLCs: "[T]he reason I'm here is that I heard this *Ballard Square* decision . . . was a problem for both corporations and LLCs. . . .

---

[12] Because an LLC is a creature of statute, accrued actions arising with respect to an LLC cannot spring from the common law. Further, because the action here did not accrue from contract, we are not presented with a concern for the interference with a vested right. There is also no substantive right affected here by applying the statute retroactively.

[13] RCW 23B.14.340 (providing a two-year survival period for claims against a corporation dissolved prior to June 7, 2006, and a three-year period for claims against corporations dissolved on or after June 7, 2006); S.B. 6596, 59th Leg., Reg. Sess. (Wash. 2006).

So I thought . . . we should [allow] a three year window in order to sue an LLC . . . if [it] dissolved." Answer to Pet. for Review at 11 (quoting Senator Weinstein's testimony found in the Tr. of House Judiciary Committee Hearing, App. C of the brief). This history shows the statute was intended to be remedial and curative.

¶61 No reason exists to distinguish the remedial and curative nature of this provision from the similar provision in the BCA. The very purpose of these amendments was to provide for a survival of claims after a company dissolves and beyond cancellation (in the case of an LLC). The house bill report shows the legislature identified the problem and enacted RCW 25.15.303 to remedy and cure the problem:

> The law governing LLCs has no express provision regarding the preservation of remedies or causes of actions following dissolution of the business entity. There is an implicit recognition of the preservation of at least an already filed claim during the wind up period following dissolution, since the person winding up the affairs is authorized to defend suits against the LLC. *However, there is no provision regarding the preservation of claims following cancellation of the certificate of formation.*

H.B. REP. on S.B. 6531, *supra*, at 2-3 (emphasis added) (discussing the matters related to preserving remedies). Further review of the legislative history supports this conclusion.

¶62 The language of the amendment evidences that the legislature intended the statute of limitations on a claim against an LLC to run for three years following dissolution and that such claims survive cancellation of the LLC within that three-year period. *See* RCW 25.15.303 ("The dissolution . . . does not take away or impair any remedy available against that limited liability company . . . , unless an action or other proceeding thereon is not *commenced within three years after the effective date of dissolution.*" (emphasis added)). This language expressly provides a limitations period of three years that is triggered upon an LLC's dissolution. This express language implies the claim may

survive cancellation where cancellation occurs within three years following dissolution.

¶63 The majority reasons such a reading is improper given the statutory language of RCW 25.15.295(2) (providing that an LLC ceases to be a separate legal entity after cancellation). Majority at 194. But because RCW 25.15-.295(2) requires the LLC to set aside funds to satisfy liabilities, it is consistent with reading RCW 25.15.303 to permit a survival of claims beyond cancellation.

¶64 In any event, the legislative history resolves any ambiguity. Here, the legislature intended RCW 25.15-.303 to permit claims against an LLC to survive cancellation. In articulating the background for the basis of the bill in support of adopting the amendment that would preserve remedies for parties filing a claim against an LLC, the bill report noted that while "[t]here is an implicit recognition of the preservation of at least an already filed claim during the wind up period. . . . [T]here is no provision regarding the preservation of claims following cancellation of the certificate of formation." H.B. REP. on S.B. 6531, supra, at 2-3 (emphasis added). This history shows the legislature did not intend RCW 25.15.303 to operate as the majority suggests. Whether the amendment is plain on its face or ambiguous, RCW 25.15.303 is properly interpreted to permit claims filed against an LLC to survive cancellation provided the claim is filed within three years following dissolution.

## CONCLUSION

¶65 The Court of Appeals should be affirmed.

SANDERS, CHAMBERS, and OWENS, JJ., concur with C. JOHNSON, J.

Reconsideration denied September 18, 2009.